UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Saratoga Potato Chips Company, Inc., a/k/a Olde York Potato Chips, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Classic Foods, Inc. et al., <br><br> Defendants. | Case No. 1:12-CV-452 JVB |

**OPINION AND ORDER**

**A. Introduction**

In 2012, Plaintiff Saratoga Potato Chips ("Saratoga") filed an action against Defendant Classic Foods, Inc., alleging breach of contract. On May 6, 2014, the Court entered a final judgment against Classic Foods in the amount of $386,646.56, plus attorney's fees. The following month, Saratoga amended its complaint to add Balance Foods, Inc., as a defendant under the theories of alter ego and successor liability. Before the Court is Defendant Balance Food's motion to dismiss the case in its entirety for lack of personal jurisdiction, or in the alternative, to transfer the case to the United States District Court for the Central District of California, Southern Division. (DE 76).

**B. Background**

On October 18, 2012, Saratoga filed this breach of contract action against Defendants Cuetara and its alleged subsidiary, Classic Foods, Inc. ("Classic"), in the Allen

1

Superior Court. (DE 1.) Defendants removed the case here based on diversity of citizenship, 28 U.S.C. § 1332. (DE 2.) This suit stems from Defendants' purported failure to pay almost $369,000 for snack foods ordered from Saratoga during July 2011 to January 2012, and failure to make payments under an August 2012 agreement settling a prior lawsuit filed by Saratoga on the matter. (DE 1.)

On April 22, 2014, the parties stipulated to a final judgment against Classic in the amount of $368,646.56, which the Court granted. (DE 57.) Accordingly, on May 7, 2014, the Clerk entered a judgment in favor of Saratoga and against Classic in the same amount. (DE 58, 60.) On June 4, 2014, Saratoga filed a supplemental pleading, seeking to add Balance as a defendant liable for Classic's debt under theories of alter ego and successor liability. (DE 63.) In doing so, Saratoga asserts it discovered that on April 7, 2014—after the partial summary judgment was granted–Classic transferred, without notice to Saratoga, all of its assets to Balance, a corporation controlled by Florencio Cuetara, the President of Classic and Cuetara. (Pl.'s Mem. of Law 4.) Saratoga alleges that Classic's "pre-acquisition business is now being conducted by Balance Foods in substantially the same manner, by substantially the same personnel, at the same physical facility, and using much of the same equipment and supplies." (Pls.' Mem. of Law 4.) As Saratoga sees it, Defendants have employed a scheme to render Classic judgment-proof in this suit. (Pl.'s Mem. of Law 5.)

On September 23, 2014, Defendant Balance filed a motion to dismiss, or in the alternative motion to transfer the case. Defendant argues that it lacks the significant contacts with the state of Indiana that would grant the Court personal jurisdiction over it, and so the Court should dismiss the entire case under Rule 12(b)(2). In addition, on October 22, 2014, Plaintiff filed a motion to strike Balance's reply brief in support of its motion to dismiss, and an

2

accompanying memorandum in support. Plaintiff argues that Balance raised new evidence and arguments in its attempt to transfer the case, which should be stricken. (DE 90.)

**C. Standard of Review**

A motion to dismiss under 12(b)(2) generally places the burden on the plaintiff to establish jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). The plaintiff may make a prima facie showing of jurisdiction by demonstrating, via affidavits or other written materials, facts that, if true, would be sufficient to establish jurisdiction over the non-resident defendant. *See Reliable Tool & Mach. Co., Inc. v. U-Haul Intl'l, Inc.*, 837 F. Supp. 274, 278 (N.D. Ind. 1993). Any conflicts in the facts must be resolved in favor of the non-moving party. *Id.* at 279.

In a diversity action filed pursuant to 28 U.S.C. § 1332, a federal district court has personal jurisdiction over a non-resident defendant "only if a court of the state in which it sits would have such jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir.2003). Determining whether jurisdiction over an out-of-state defendant is proper involves two inquires: (1) whether the forum state's long-arm statute allows jurisdiction, and (2) whether assertion of personal jurisdiction violates due process. *See Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1232 (Ind. 2000); *see also Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990). Indiana courts determine their personal jurisdiction over non-resident defendants by applying the long-arm statute set forth in Indiana Trial Rule 4.4(A), which extends personal jurisdiction to the limits allowed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006). Accordingly, the court "need only engage in a single search for the

outer limits of what due process permits." *Reliable Tool v. U-Haul*, 837 F.Supp. at 278; *see also Purdue Research v. Sanofi-Synthelabo*, 338 F.3d at 779 (citing In*t'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir.2002)).

**D. Discussion**

**(1)** *Plaintiff's Motion to Strike is Denied*

As a preliminary matter, the Court must rule on Plaintiff's motion to strike Balance's reply brief in support of its motion to dismiss. "Where new evidence is presented in either a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion . . . or else strike that new evidence." *Baugh v. City of Milwaukee*, 823 F. Supp. at 1457 (E.D. Wisc. 1993).

The Court denies Plaintiff's motion, but has considered the additional arguments made in its memorandum of law in support of its motion to strike.

**(2)** *The Court has Personal Jurisdiction over Balance Foods*

A. *Minimum Contacts*

To subject a non-resident defendant to personal jurisdiction, due process requires that the defendant must have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Necessary minimum contacts are defined as "some act by which the defendant purposefully

avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

A court may obtain personal jurisdiction over a defendant based upon either the defendant's general contacts with the forum or the defendant's specific contacts with the forum. *See Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 149 F.Supp.2d 615, 624 (S.D. Ind.2001) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). General personal jurisdiction requires substantial, continuous, and systematic contacts and presence in the forum state, *id*., while specific personal jurisdiction "is utilized where the defendant lacks a general presence in the state and where the only possible basis for hauling the defendant into court arises from or is related to the contacts giving rise to the litigation." *N. Texas Steel Co., Inc. v. R.R. Donnelley & Sons Co*., 679 N.E.2d 513, 518 (Ind.Ct.App.1997) (citation omitted). A "single act" can support a finding of specific jurisdiction, so long as that act creates a "substantial connection" with the forum state. *Id.*

A court may pierce the corporate veil and assert personal jurisdiction over individuals who otherwise would not be subject to the court's jurisdiction where corporate form is ignored. *IDS Life Ins. Co. v. Sun America Life Ins. Co*., 136 F.3d 537, 540 (7th Cir.1998); see also *In re Teknek, L .L.C*., 354 B.R. 181, 196 n. 5 (Bankr. N.D. Ill. 2006) ("The exception permits the individual corporate defendant to be roped in with personal jurisdiction if the plaintiff makes a prima facie showing . . . that the corporate form is a shell or sham rather than a real, separate entity."). Under Indiana law, application of the piercing the corporate veil doctrine depends on a number of non-exhaustive factors, including the failure to observe required corporate formalities and the commingling of assets and affairs. *See Escobedo v. BHM Health Assoc., Inc*., 818 N.E.2d 930, 933 (Ind.2004). Corporate law permits the corporate form to be disregarded and personal

liability imposed only where (1) the corporate form is so ignored, controlled, or manipulated that it is merely the instrumentality of another, and (2) the misuse of the corporate form constitutes a fraud or promotes injustice. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994).

Balance is a Delaware Corporation doing business in the state of California. Balance asserts that it does not do business in Indiana and has no customers in the state, so the Court has no jurisdiction over it. Indeed, there is no evidence in the record indicating that Balance has any contacts with the state of Indiana. Saratoga counters that Balance is liable for the judgment against Classic as Classic's alter ego or under the theory of successor liability. It is uncontested that Balance purchased the assets of Classic to operate a snack making company as Classic did, and that the companies share the same president in Florencio Cuetara. The parties dispute whether Balance and Classic share the same offices, telephone number, and website, but any conflicts in the facts must be resolved in favor of the non-moving party. See *Reliable Tool* at 279. These facts support the conclusion that the distinction between Classic and Balance was not observed and that Balance is acting as Classic's alter ego. To allow Balance to purchase Classic's assets and operate in largely the same fashion as Classic while ignoring the judgment against Classic would promote injustice.

B. *Fairness Inquiry*

Because Balance's contacts are sufficient, the Court must evaluate whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice by weighing a variety of interests. *See Brockman v. Kravic*, 779 N.E.2d at 1256 (Ind. Ct. App. 2002) (citing *Anthem v. Tenet Healthcare Corp.*, 730 N.E.2d at 1234 (Ind. 2000)). The court may evaluate the burden on the defendant, the forum state's interest in adjudicating the dispute, the

plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King v. Rudzewicz*, 471 U.S. at 477 (1985).

Balance states that it will be burdened by proceeding with the case in the Northern District of Indiana because its witnesses and relevant documents are located in California. However, Balance does not identify these witnesses or what documents it will need to produce.

Balance attempts to frame the issue in the context of its assignment of Classic's assets under California law, but the issue here is actually Saratoga's attempt to collect on its judgment against Classic, an agreement which contained a forum selection clause, and a conflict that initially arose in Indiana. (DE 44). The court finds that Balance's contacts with Indiana are specifically related to the business of this lawsuit and sufficient to subject it to suit in this state. Further, the exercise of personal jurisdiction over Balance comports with traditional notions of fair play and substantial justice. Accordingly, the court denies Balance's motion to dismiss for lack of personal jurisdiction.

**(3)** *Defendant's Motion to Transfer is Denied*

A district court may transfer any civil action to any other district where the plaintiff had a right to bring the case. 28 U.S.C. § 1404(a). In exercising discretion to transfer, district courts employ a "flexible and individualized analysis," focusing on: (1) whether venue is proper in both the transferor and transferee courts; (2) whether transfer is for the convenience of the parties and witnesses; and (3) whether the transfer will serve the convenience of the parties and witnesses as

well as the interests of justice. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-31 (1988); *see also Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989).

    A.  *Private Factors*

As already discussed, venue is proper in this court. As a result, the court must consider whether transfer serves the convenience of the parties and witnesses and the interests of justice. In deciding whether transfer serves the private interests of the parties and witnesses, the court may consider a number of factors, including: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *See First Nat'l Bank v. El Camino Resources*, Ltd., 447 F. Supp. 2d 902, 911-912 (N.D. Ill.2006).

Forum selection clauses generally are given deference in determining whether to transfer venue but are not dispositive of a court's decision on a motion to transfer. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. at 30–31 (holding that a forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in Section 1404(a)."); *see also Heller Fin. v. Midwhey Powder*, 883 F.2d at 1293 (explaining that forum selection clauses are not dispositive "because only one of § 1404(a)'s factors-convenience of the parties-is within the parties' power to waive"). Instead, a forum selection clause will not be enforced if the objecting party can show that enforcement would be unreasonable and unjust, effectively depriving the litigant from its day in court. *See Muzumdar v. Wellness Int'l Network*, 438 F.3d at 762; *see also Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind.Ct.App.2005) (holding that under Indiana law, forum selection clauses are enforceable if they are freely negotiated and "there is no evidence of fraud or

overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court.").

Balance attempts to frame the issue as a dispute about the assignment of Classic's assets, though this case arises from a breach of a contract claim, and allegations of alter ego and successor liability to be settled under Indiana law rather than a dispute about the propriety of the assignment agreement under California law. Saratoga chose to initiate this case and to settle disputes about settlement in the Northern District of Indiana. The Northern District of Indiana is also where the material events occurred. The Court gives great weight to this factor.

As to the relative ease and access to sources of proof, Balance provides an affidavit stating that all of Balance's, and likely Classic's business records, are located in California. However, Saratoga points out that to date Classic has not produced any documents requested in discovery. Neither Balance nor Classic have addressed why these documents cannot be produced electronically, as Saratoga points out. The Court gives some weight to this factor.

Convenience considerations include the number of witnesses involved, travel distances and associated costs for these witnesses, the willingness of the witnesses to appear, or whether the witness is within the court's reach to compel appearance." *Brotherhood Mutual Insurance Co. v. GuideOne Mutual Insurance Co.*, 2011 WL 1627114, *4 (N.D.Ind. April 28, 2011). The party moving to transfer venue must demonstrate precisely who the witnesses are and why they are important so the court may afford the appropriate weight to this factor. *Rose v. Franchetti,* 713 F. Supp. 1203, 1214 (N.D.Ill.1989). Otherwise, this factor may be weighed only marginally, if at all, in favor of the moving party. Rose, 713 F. Supp. at 1214. It is insufficient for the moving party simply to state that a number of witnesses reside in or near the forum to which the party desires to have the case transferred without identifying the witnesses and their proposed

testimony. *See Popovich v. Weingarten*, 2010 WL 4318798 (N.D.Ind. Oct.25, 2010) (explaining that the moving party must identify the potential witnesses and their proposed testimony).

In its reply brief, Balance suggests that its representatives and officers may testify at trial, but does not even identify how many witnesses it has or what they may testify to. Balance also does not address how keeping the case in Indiana will inconvenience its president, Florencio Cuetara. Accordingly, the Court gives little weight to these factors.

B. *Public Factors*

The court must also consider the interests of justice in determining whether to transfer under § 1404(a). "This analysis focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 961 (N.D.Ill.2000). Public interest factors include "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *First Nat'l Bank v. El Camino*, 447 F.Supp.2d at 912.

The court's familiarity with applicable law is an important factor, but is not determinative of a decision to transfer. *Boone v. Sulphur Creek Resort, Inc.*, 749 F. Supp. 195, 202 (S.D.Ind.1990) ("Whether [Indiana] law is to be applied or not, this determination will not override the other considerations relevant to the transfer issue . . ."). For example, "where the law in question is neither complex nor unsettled, the interest of justice remain neutral between competing courts." *First Nat'l Bank v. El Camino Resources*, 447 F.Supp.2d at 914

Balance argues that the public factors support transfer to California, citing several statistics showing that Central District of California courts have lower caseloads and resolve cases more quickly than courts in the Northern District of Indiana. In addition, Balance argues

for transfer because of the Central District of California's familiarity with California law and the desirability of resolving the conflict there.

Balance points to nothing particularly complex about this case that favors transfer, and as discussed above, the original breach of contract claim is to be settled under Indiana law, which this Court has more familiarity with than a California court. Balance also frames this conflict as one purely about the general assignment and sale in arguing for the need to resolve the case in California, but as the material events and settlement agreement took place in Indiana, this factor favors Saratoga. S*ee Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D.Ill.1997) ("Resolving litigated controversies in their locale is a desirable goal of the federal courts.").

In sum, Balance has not demonstrated that the private and public interests in this case would be served to a greater degree in the Central District of California. Accordingly, the Court denies the motion for transfer.

**Conclusion**

Plaintiff has made a *prima facie* showing that jurisdiction is proper under Rule 12(B)(2). Defendant's motion to dismiss or to transfer (DE 76) is denied.

SO ORDERED on April 20, 2015.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE